UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESEE
AT NASHVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ex. rel. RACHEL CAROL ANDERSON and STEVEN TROY MATHIS, and <br><br> STATE OF TENNESSEE, ex. rel. RACHEL CAROL ANDERSON and STEVEN TROY MATHIS, <br><br> Plaintiffs, <br><br> vs. <br><br> CURO HEALTH SERVICES HOLDINGS, INC., CURO HEALTH SERVICES LLC f/k/a/ CURO HEATH SERVICES, INC. TNMO HEALTHCARE, LLC d/b/a/ AVALON HOSPICE,; and REGENCY HEALTH CARE GROUP LLC, <br><br> Defendants. | Civil Action No. 3:13-cv-00672 (Lead) <br> 3:20-cv-00168 (Member) <br> JUDGE TRAUGER <br><br> JURY DEMAND |

## SECOND AMENDED COMPLAINT
PURSUANT TO THE FEDERAL FALSE CLAIMS ACT (FCA) AND THE TENNESSEE MEDICAID FALSE CLAIMS ACT (TMFCA) AND TENNNESSEE STATE LAW AND COMMON LAW

### INTRODUCTION

Plaintiffs, **RACHEL CAROL ANDERSON** (Anderson) and **STEVEN TROY MATHIS** (Mathis), bring this action against all Defendants collectively, under 31 U.S.C §3729, et seq., as amended (False Claims Act) and T.C.A. § 71-5-181 TO -185 of the Tennessee Medicaid False Claims Act (TMFCA), to recover all damages, penalties and other remedies established by the federal and state False Claims Act(s) regarding the submission of

false claims For payment to Medicare and Tennessee Medicaid programs and common law theories of payment by mistake) and unjust enrichment against all Defendants collectively who provides hospice care through its affiliate Avalon Hospice. Plaintiffs Anderson and Mathis bring separate actions for retaliatory discharge under Tennessee law.

## PRELIMINARY STATEMENT

1. Plaintiffs Anderson and Mathis bring this action to recover damages and civil penalties for violations of the False Claims Act (FCA), 31 U.S.C. §§ 3729 to 3733, the Tennessee Medicaid False Claims Act (TMFCA), Tenn. Code Ann. § 71-5-181 to 185 arising from false or fraudulent records, statements, or claims, or any combination thereof, made, used or caused to be made, used, or presented, or any combination thereof, by the defendants, their agents, employees, or co-conspirators, or any combination thereof, with respect to false claims related to hospice care for which claims were made to the federal Medicare Program and Tennessee Medicaid Program. Plaintiffs bring this action pursuant to the above statutes, and common law theories of payment by mistake and unjust enrichment, and retaliation and/or retaliatory discharge under TMFCA, T.C.A. § 71-5-181 to 185, and the Tennessee Whistleblower law, T.C.A. § 50-1-304 - discharge for refusal to participate in or remain silent about illegal activities involving all Defendants collectively, who provide hospice care through its affiliate Avalon Hospice.

2. Plaintiffs Anderson and Mathis seek to recover damages and civil penalties for violations of the FCA and TMFCA arising from false or fraudulent records, statements, or claims, or any combination thereof, made, used or caused to be made, used, or presented, or any combination thereof, by the defendant, its agents, employees, or co-conspirators, or any

2

Case 3:13-cv-00672     Document 142     Filed 08/30/21     Page 2 of 19 PageID #: 1134

combination thereof, with respect to false claims related to hospice care made to the Medicare Program and Tennessee Medicaid Program.

3. The False Claims Act provides that any person who knowingly submits, or causes the submission of, a false or fraudulent claim to the U.S. Government for payment or approval is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government.

4. The Tennessee Medicaid False Claims Act provides that any person who knowingly submits, or causes the submission of, a false or fraudulent claim for payment or approval is liable for a civil penalty of not less than five thousand dollars ($5,000) and not more than twenty-five thousand dollars ($25,000), adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 101-410), plus three (3) times the amount of damages which the state sustains because of the act of that person.

5. The False Claims Act and Tennessee Medicaid False Claims Act allow any person having information about a false or fraudulent claim against the Government to bring an action for himself and the Government, and to share in any recovery.

6. Under Medicare and Tennessee Medicaid, health care organizations have specific responsibilities to prevent false claims from being presented and are liable under the False Claims Acts under federal and state law for their role in the submission of false claims.

7. Upon information and belief, the United States and State of Tennessee and suffered millions of dollars in damages because of submission of these false claims.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, and 31 U.S.C. §3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730.

9. This Court has personal jurisdiction over the defendants pursuant to 31 U.S.C. §3732(a) because that section authorizes nationwide service of process and because all the defendants have at least minimum contacts with the United States, and can be found in, reside, or transact or have transacted, business in both Middle and Eastern Districts of Tennessee.

10. Venue exists in the United States District Court for the Middle District of Tennessee pursuant to 31 U.S.C. § 3730(b)(1) because all of the defendants have at least minimum contacts with the United States, and the defendants can be found in, reside, or transact or have transacted business in the Middle District of Tennessee.

11. This cause of action is timely brought within the applicable statute of limitations due to: (a) the dates of Defendants' actions; (b) the dates the claims were paid; and (c) tolling agreements, if any, executed by Defendants.

## PARTIES

12. Plaintiff Troy Mathis is a resident of Franklin County in the Eastern District of Tennessee and was employed as the Case Manager for Social Work (MSW) at Avalon Hospice, an affiliate of Defendant Curo Health Services, LLC that maintains an office Coffee County, Tennessee.

13. Plaintiff Rachel Carol Anderson is a resident of Marion County and resides in the Eastern District of Tennessee and was employed as Case Manager at Avalon Hospice, an affiliate of Defendant Curo Health Services, LLC that maintains an office Coffee County,

4

Tennessee.

14. Defendant Curo Health Services Holdings, Inc. is a Delaware Corporation, headquartered at 491 Williamson Rd, Suite 204, Mooresville, NC 28117. Curo is a portfolio company of a Chicago private equity group, GTCR. Curo operates six hospice groups in various states, including hospices located in the Middle Tennessee District of Tennessee.

15. Defendant TENMO Healthcare, LLC ("TNMO") is a Delaware corporation, headquartered at 491 Williamson Rd, Suite 204, Mooresville, NC 28117-9255, doing business as Avalon Hospice. TNMO Healthcare is, upon information and belief, wholly-owned by Curo.

16. Relators allege that the above Defendants are alter egos of one another and are under common control. Curo Health Services Holdings, LLC, TNMO, and Avalon are headquartered at the same address in North Carolina. Internal reports used by Defendants for its hospices, such as the Jackson office of Avalon, use "Curo," "Regency Health Care," and "Avalon" interchangeably. Curo's website calls "Avalon" one of its hospice brands.

17. Defendant Regency Health Care Group LLC ("Regency") is a Delaware Corporation. On information and belief, Regency acquired the Avalon locations in Tennessee in 2008, at which point they were converted into Defendant TNMO Healthcare, LLC.

18. Upon Information and belief Defendants continue to submit or cause to be submitted claims to Medicare and Medicaid for hospice services, which constitute false claims under the False Claims Act and Tennessee Medicaid False Claims Act.

## APPLICABLE LAW

A. Medicare and Medicaid

5

19. Medicare is a public assistance program providing for payment of medical expenses for persons over the age of 65. Funding for Medicaid is shared between the federal government and state governments.

20. Tennessee Medicaid is a public assistance program that Defendants used as a payor source for unqualified hospice patients.

21. Every health care organization must agree to comply with all Medicare and Medicaid requirements to provides services to those beneficiaries and submit or cause to be submitted legitimate claims to Medicare and Medicaid for hospice services.

### B. False Claims Act

22. Liability for violations of the False Claims Act liability attaches to any person who knowingly presents or causes a false or fraudulent claim to be presented for payment, or to a false record or statement made to get a false or fraudulent claim paid by the government. 31 U.S.C. §3729(a)(1) & (2).

23. Under the False Claims Act, "knowing" and "knowingly" mean that a person, with respect to information: (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. 31 U.S.C. §3729(b).

24. The False Claims Act is violated by a person who makes a false statement or a false record to get the government to pay a claim, and also by one who engages in a course of conduct that causes the government to pay a false or fraudulent claim for money.

### C. Tennessee Medicaid False Claims Act

25. Liability for violations of the Tennessee Medicaid False Claims Act as provided in T.C.A. §§ 71-5-182–71-5-185 attaches to any person who (A) Knowingly presents, or causes

to be presented, a false or fraudulent claim for payment or approval under the Medicaid program;

(B) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim to get a false or fraudulent claim under the Medicaid program paid for or approved; (C) Conspires to commit a violation of subsection (A), (B), or (D); or

(D) Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money, or property to the state, or knowingly conceals, or knowingly and improperly, avoids, or decreases an obligation to pay or transmit money or property to the state, relative to the Medicaid program.

26. The Tennessee Medicaid False Claims Act is violated by a person who makes a false statement or a false record to get the government to pay a claim, and also by one who engages in a course of conduct that causes the government to pay a false or fraudulent claim for money.

## FACTUAL ALLEGATIONS

27. Hospice care is defined as palliative care for patients with less than six months to live. Hospice care is a relatively new element of health care in the United Sates. Medicare first paid for hospice care in 1983. Medicare Payment Advisory commission, *Report to Congress: Medicare payment Policy* March 2013, Ch. 12 p. 263. (hereinafter "MEDPAC 20163") (excerpts attached hereto as Ex. A.) Hospice care has become a very fast-growing segment of the health care market.

28. In 2011, an estimated 1.2 million patients received services from hospice *Id.* In 2011, Medicare paid approximately $13.8 Billion for hospice care, more than four-times what Medicare paid in 2000. *Is* in 2011, 45.2 percent of Medicare beneficiaries who died that year used hospice, up from 23 percent in *Id.* At 269.

29. Relator Mathis began employment in April 2014 at Avalon Hospice, an affiliate of Defendant Curo Health Services, LLC. In May 2015, Avalon evaluated Plaintiff and found him

to be a very favorable employee with no complaints concerning his job performance.

30. Relator Mathis in performing his duties as Case Manager for Social Work (MSW) observed that Avalon's employees made false promises and marketed hospice services to non-terminal patients and admitted and re-certified them for payment under the Medicare and Tennessee Medicaid benefit programs.

31. Relator Mathis became frustrated because he encountered difficulty in relocation of unqualified hospice patients who had to be removed from the nursing home because they had no other payor source other than Medicare or Tennessee Medicaid.

32. Defendant Avalon allowed a great number of its patients to remained on hospice for well over a year and some up to five (5) years.

33. Plaintiffs used reasonable efforts to identify patients that were unqualified for hospice care as of January 12, 2015. The patients unlikely to have a terminal illness as to qualify for hospice care were as follows:

| | Client Name | MR No. | Medicare | TN/Medicaid/Other | Start of Care |
|---|---|---|---|---|---|
| 1 | AB | 00007887202 | X | - | 06/13/2014;12/10/2014 |
| 2 | SB | 00010294302 | X | X | 12/3/2014 |
| 3 | WC | 00007094802 | X | X | 03/07/2014;01/01/2015 |
| 4 | MD | 00007244902 | X | X | 03/16/2014;11/21/2014 |
| 5 | LD | 00007038602 | X | - | 03/04/2014;12/19/2014 |
| 6 | BD | 00007695202 | X | - | 05/22/2014;11/18/2014 |
| 7 | LD | 00007636902 | X | - | 05/14/20/14;01/09/2015 |
| 8 | WE | 00008445802 | X | X | 08/01/2014;10/30/2014 |

8

| # | ID | Col1 | Col2 | Col3 | Dates |
|---|----|------|------|------|-------|
| 9 | MF | 00006366102 | X | - | 12/09/2013;12/04/2014 |
| 10 | JH | 00001494702 | X | X | 03/31/2011;01/09/2015 |
| 11 | WH | 00010494502 | X | BCBS Fed.l(TN) | 12/16/2014 |
| 12 | LH | 00008239102 | X | - | 07/17/2014;10/15/2014 |
| 13 | TH | 00002818802 | X | X | 01/08/2015 |
| 14 | MH | 00004380802 | X | X | 04/01/2013;11/22/2014 |
| 15 | KJ | 00005958402 | X | X | 11/07/2013;12/02/2014 |
| 16 | MJ | 00004875402 | X | - | 05/25/2013/11/16/2014 |
| 17 | PJ | 00004875002 | X | - | 05/25/2013;11/16/2014 |
| 18 | RL | 00009293202 | X | X | 09/24/14;12/23/2014 |
| 19 | JL | 00010776102 | X | - | 01/07/2015;01/07/2015 |
| 20 | WL | 00007840002 | X | - | 06/09/2014;12/06/2014 |
| 21 | LM | 00007772302 | X | - | 06/01/2014;11/28/2014 |
| 22 | AM | 00005323102 | X | X | 07/20/2013;01/11/2015 |
| 23 | RM | 00009305502 | X | - | 09/25/2014;12/24/2014 |
| 24 | MM | 00010192302 | X | - | 11/26/2014 |
| 25 | JM | 00010637102 | X | Unfunded charity | 12/9/2014 |
| 26 | CM | 00008754502 | X | - | 08/21/2014;11/19/2014 |
| 27 | MM | 00008235602 | X | - | 07/17/2014;10/15/2014 |
| 28 | RM | 00007256302 | X | - | 03/27/2014;11/22/2014 |
| 29 | PM | 00001496702 | X | X | 03/17/2011/12/26/2014 |
| 30 | WM | 00010248802 | X | X | 12/01/2014 |
| 31 | GM | 00007346302 | X | X | 04/08/2014;12/04/2014 |

| 32 | CP | 00006066502 | X | X | 12/01/2014 |
| 33 | PP | 00008006802 | X | - | 08/05/2014;1/02/15 |
| 34 | EP | 00008004902 | X | - | 06/26/2014;12/23/2014 |
| 35 | MR | 00002272502 | X | - | 06/25/2012;12/12/2014 |
| 36 | ZR | 00010389702 | X | - | 12/09/2014 |
| 37 | LS | 00010254702 | X | - | 12/1/2014 |
| 38 | LW | 00007209702 | X | X | 03/21/2014;11/16/2014 |

34. Plaintiff Mathis expressed his concerns with the Director(s) of Operations, and Area Director of Operations administrators who met with two nursing home administrators concerning Avalon's marketers making referrals for patients who clearly were not qualified for hospice care.

35. On September 24, 2015 Plaintiff Mathis advised a family that the marketers had promised services that Avalon simply could not provide. Relator Mathis instructed the family to read the admissions handbook that listed all services provided by the defendant. He marked the pages and attempted to clarify services available to hospice patients.

36. Thereafter, the family sought to a change in social workers because the markers promised more services than Relator Mathis had advised were available.

37. On Friday, October 2, 2015, Defendant's Nurse Practitioner, Deanna Britton, presented a list of hospice patients to Relator Mathis to which he expressed concern about the marketing practices and certifications that that caused the acceptance of unqualified patients to receive hospice care.

38. On Saturday, October 3, 2015, Relator Mathis went on vacation to Florida. On the following Wednesday, October 7, 2015, Director of Operations Nena Hart while in an IDG (Interdisciplinary Group) meeting, texted Relator Mathis to discuss the signing of his IDG notes

10

from his patient visits. Relator Mathis could not sign off on his patient visits because he did not have possession of his tablet to make the entries that became available after he left for vacation.

39. Avalon's Director of Operations Nena Hart directed another social worker to sign off on notes concerning the IDG visits made by Relator Mathis before he left for vacation.

40. On Monday, October 12, 2015, when Relator Mathis returned to work, Defendant's Director of Operations Nena Hart sent a text message and requested that he come to her office. Avalon's Director of Operations advised Relator Mathis that Tonya Barrier, Director of Operations at the Lewisburg office, thought it was time to let him go.

41. On October 12, 2015, Defendants terminated Mr. Mathis after he questioned the fraudulent practices that caused the admission of non-terminal patients for hospice care.

42. The Director of Operations Nena Hart completed the Employee Corrective Action Notice and terminated Relator Mathis for "substandard work" and falsely stated that he had received a verbal warning and a written warning from the "Prior DOO" (Director of Operations).

43. Relator Anderson began employment at Avalon Hospice in March 2014. While serving as Case Manager, she questioned the Avalon's practices that caused the admission of patients who were without a terminal condition as to qualify for hospice care.

44. Relator Anderson satisfactorily performed her duties and was promoted to Patient Care Coordinator in January 2015, received a raise and thereafter served as Case Manager. Plaintiff had received no verbal or written warnings concerning her job performance.

45. During employment as Case Manager, Director of Operations Candi Parker directed Relator Anderson to use "7A" to designate all Alzheimer patients. Soon thereafter, Relator Anderson expressed concern to the Defendant's medical director, Dr. Ephraim Gammada, Nurse Practitioner Deanna Britton and Director of Operations Nena Hart about whether an Alzheimer's

11

was appropriate for hospice care because he remained alert, oriented and ambulatory.

46. In June 2015, Relator Anderson advised Director of Operations Nena Hart that she was going to see some of the hospice patients every two weeks instead of weekly because she observed no health decline and questioned whether the patients actually had a terminal condition. Director of Operations Nena Hart directed Relator Mathis that her assessment was incorrect and "to step up" her documentation.

47. In late summer 2015, Relator Anderson discussed with Nurse Practitioner Deanna Britton her concern that a hospice patient had shown no signs of declining health due to his Alzheimer disease. Avalon's Nurse Practitioner changed her face to face notes to reflect a diagnosis to COPD After Relator Anderson expressed her reluctance and opposition to making such a change, Avalon's Nurse Practitioner Deanna Britton directed her to document the patient as COPD.

48. Avalon's Nurse Practitioner failed to write an order to officially change the diagnosis from Alzheimer's to COPD in the patient's medical chart.

49. On October 30, 2015, at direction of the Director of Operations Nena Hart, Patient Care Coordinator Cassie Hill questioned Relator Anderson about a chart audit that revealed a change in the patient's diagnosis from Alzheimer's (7A) to COPD.

50. Relator Anderson advised the patient care coordinator that she had questioned the nurse practitioner on several occasions about the patient who showed no decline in his health. Relator Anderson advised the Patient Care Coordinator that the nurse practitioner advised the directed her to make the change from Alzheimers (7A) to COPD.

51. On October 30, 2015, the Director of Operations Nena Hart completed the Defendant's Employee Corrective Action Notice and terminated Relator Anderson's employment, and falsely

stated that she had violated company policy had received a previous warning.

52. The Director of Operations Nena Hart falsely stated that Relator Anderson "admitted to falsifying documentation to keep patients on hospice services."

53. Defendant's reasons given to terminate of Relator Anderson were a mere pretext to discharge her solely because of her opposition and/or refusal to participate in, or for refusing to remain silent about illegal activities involving fraudulent practices and submission of false claims.

54. Shortly after termination of both Plaintiffs, Defendant promoted the Director of Operations Nena Hart to the position of Area Director of Operations.

55. The Director of Operations (DOO) Nena Hart and the prior DOO allowed its staff to use the log in information of the medical director and electronically sign his name to Certificate of Terminal Illness (CTI) without the doctor seeing the patient or reviewing the medical record.

56. The prior Director of Operations Candi Parker and required the Patient Care Coordinator Cassie Hill and others to falsely certify that patients had a terminal illness with a life expectancy of six months or less in violation of certification requirements for hospice care provided by the Medicare and Medicaid programs.

57. Defendants allowed its employees to collect prescription drugs from a patient's home and redistributed for use by other hospice patients.

58. Defendants allowed its employees to commit acts of hospice fraud when its employees fraudulently caused patients to "voluntarily discharge before expensive hospital visits in order to shift such expensive costs away from the hospice company.

59. Defendants allowed its employees to commit acts of hospice fraud when its employees fraudulently back-dated admission and discharge elections.

60. Defendants allowed its employees to commit acts of hospice fraud when its employees fraudulently prepared notes to patients' charts for nurses who were on vacation.

61. Defendants allowed its employees to commit acts of hospice fraud when its employees paid kickbacks in the form of in-kind services to nursing homes and other facilities.

## FIRST CAUSE OF ACTION

## FALSE CLAIMS ACT, 31 U.S.C. 3729(a)(1)

62. Plaintiffs restate and incorporate by reference the preceding paragraphs as if fully set forth herein. Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval by Medicare programs, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

63. The United States, unaware of the falsity of the records, statements and claims made or caused to be made by Defendants, paid claims that it would not have paid but for Defendants' fraudulent conduct.

64. By reason of Defendants' acts the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial

65. Additionally, the United States is entitled to the maximum penalty of $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, plus three times the amount of damages which the Government sustains because of the Defendants' conduct described herein. 31 U.S.C § 3729 (a)(1)(G).

66. This is a claim for damages and relief available under a provision of the federal False Claims Act, 31 U.S.C. § 3730(h).

67. Relators are entitled to relief, as Defendants discharge them and discriminated against then in the terms and conditions of their employment because of their lawful acts in furtherance of an action under 31 U.S.C. § 3730, or their efforts to stop violations of the False Claims Act.

### FALSE CLAIMS ACT, 31 U.S.C. § 3729(A)(1)(B).

Plaintiffs restate and incorporate by reference in the proceeding paragraphs as if fully set forth herein.

68. Plaintiffs knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, in violation of the False Claims Act, § 3729(a)(1)(B), including false Certificate(s) of Terminal Illness.

69. Additionally, the United States is entitled to the maximum penalty of $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, plus three times the amount of damages which the Government sustains because of the Defendants' conduct described herein. 31 U.S.C § 3729 (a)(1)(G).

### TENNESSEE MEDICAID FALSE CLAIMS ACT, T.C.A. § 71-5-181 -185.

Plaintiffs restate and incorporate by reference in proceeding paragraphs as if fully set forth herein.

70. Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval by the Tennessee Medicaid programs, in violation of the Tennessee Medicaid False Claims Act (TMFC), T.C.A. § 71-5-181 -185.

71. As a result of the false or fraudulent claims that these Defendants presented, or caused to be presented to the Tennessee Medicaid program, the State of Tennessee has suffered damages and is entitled to and requests treble damages under the Tennessee Medicaid False Claims Act, in an amount to be determined at trial, plus a civil penalty of $5,000 to $25,000 for each violation, adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 101-410, plus three (3) times the amount of damages which the state sustains because of the act of that person.

72. Pursuant to the TMFC, Defendants are liable to the State of Tennessee for damages resulting from such false claims, in an amount to be determined at trial, trebled, plus civil penalties for each violation.

### TENNESSEE STATE WHISTLEBLOWER STATUTE, TENN. CODE ANN. § 50-1-301 (A), (D)(1), AND TENNESSEE COMMON LAW- RETALIATION AND/RETALIATORY DISCHARGE

73. Relators restate and incorporate by reference the preceding paragraphs as if fully set forth herein.

74. Relators opposed Defendant's Illegal activities including, but not limited to, fraudulent marketing practices, false certifications of patients for hospice care, and fraudulent recording and certification of notes in the patient's medical chart.

75. The actions of Defendant's employees involved in the solicitation and certification of patients for hospice care violate either the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare.

16

76. Defendants wrongfully terminated the employment of Relators Anderson and Mathis in violation of TMFCA, T.C.A. § 71-5-181 to 185 and T.C.A § 50-1-304 relating to in participation in this proceeding and as result of being wrongfully discharged in retaliation for opposing and refusal to participate and/ or remain silent about illegal activities.

## DEFENDANTS' LIABILITY

77. By virtue of the acts described above, defendants knowingly (a) submitted, and continue to submit, and/or (b) caused and/or continue cause to be submitted, false or fraudulent claims to the United States Government and the State of Tennessee for payment of hospice services rendered to unqualified residents. The Government paid and continues to pay such false claims.

78. By reason of the defendants' acts, the United States and the State of Tennessee have been damaged, and continue to be damaged, in substantial amount to be determined at trial. Defendants are liable to Plaintiff Anderson and Plaintiff Mathis under state law for retaliatory discharge.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendant as follows:

A. Judgment in an amount equal to three times the amount of each false claim for compensation by Defendants, plus civil penalty of $10,000 for each violation of 31 U.S.C. 3729 (a)(1));

B. An award to each Plaintiff Mathis and Plaintiff Anderson of the maximum amount allowed pursuant to 31 U.S.C. 3730(d);

C. All relief to which Plaintiff Mathis and Plaintiff Anderson are entitled under 31 U.S.C 3730(h);

D. Damages to Plaintiff Mathis and Plaintiff Anderson pursuant to Tenn. Code Ann. § 50-1-304(d)(1);

E. Damages to Plaintiff Mathis and Plaintiff Anderson pursuant to Tennessee common law;

F. Punitive damages sufficient to deter future conduct.

G. With respect to each Count, that Plaintiffs be afforded interest, attorney's fees and, expenses and costs as allowed by law;

H. Any and all further relief as the Court deems just and proper; and

I. The Plaintiffs demand a trial by jury on all so triable issues.

Dated: August 26, 2021

Respectfully Submitted,

*s/ Michelle M. Benjamin*

Michelle M. Benjamin, BPR No. 12377
Attorney for Plaintiffs Anderson and Mathis
P. O. Box 177
Winchester, TN 37398
(931) 962-0006

# CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2021, I caused a copy of the foregoing document was filed electronically via the Court's ECF filing system to:

Kaitlin Hazard   Wynn M. Shuford   United States Attorney's Office Middle District of Tennessee   110 9th Avenue South, Suite A-961 Nashville, TN 37203-3870
Kaitlin.Hazard@usdoj.gov Wynn.Shuford@usdof.gov

Scott Corley   Assistant Attorney General   Office of the Tennessee Attorney General P.O. Box 20207   Nashville, TN 37202 Scott.corley@ag.tn.gov

Kenneth S. Byrd   Lieff, Cabraser, Heimann & Bernstein, LLP (Nashville Office) 222 2nd Avenue South   Suite 1640   Nashville, TN 37201   Email: kbyrd@lchb.com

Lexi J. Hazam   Lieff, Cabraser, Heimann & Bernstein, LLP (San Francisco) 275 Battery Street   29th Floor   San Francisco, CA 94111-3339   Email: lhazam@lchb.com

Ty E. Howard   Bradley Arant Boult Cummings LLP 1600 Division Street, Suite 700 Nashville, TN 37203   615-252-2376 thoward@bradley.com

s/ *Michelle M. Benjamin*
Michelle M. Benjamin